Electronically Filed
Intermediate Court of Appeals
CAAP-12-0001009
30-MAR-2015
09:24 AM

CAAP-12-0001009

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
DARIN F. LAU, Defendant-Appellant.


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTC-12-003777)


MEMORANDUM OPINION
(By: Nakamura, C.J., and Fujise and Leonard, JJ.)


Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant Darin F. Lau (Lau) by complaint with Operating a Vehicle After License and Privilege Have Been Suspended or Revoked for Operating a Vehicle Under the Influence of an Intoxicant (OVLPSR-OVUII) as a first offender, in violation of Hawaii Revised Statutes (HRS) § 291E-62(a)(1) and/or (a)(2) and (b)(1) (Supp. 2014).[1][2] After a bench trial, the District

---

[1] HRS § 291E-62 provides in relevant part:

> (a)   No person whose license and privilege to operate a vehicle have been revoked, suspended, or otherwise restricted pursuant to this section or to part III or section 291E-61 or 291E-61.5, or to part VII or part XIV of chapter 286 or section 200-81, 291-4, 291-4.4, 291-4.5, or 291-7 as those provisions were in effect on December 31, 2001, shall operate or assume actual physical control of any vehicle:
>
> > (1)   In violation of any restrictions placed on the person's license; [or]
> >
> > (2)   While the person's license or privilege to operate a
> > (continued...)

Court of the First Circuit (District Court)[3] found Lau guilty as charged of OVLPSR-OVUII. The District Court sentenced Lau to three days in jail, imposed a $500 fine and other fees and assessments, and revoked his driver's license for one year. The District Court entered its Judgment on October 19, 2012.

On appeal, Lau contends that: (1) the District Court erred in failing to properly advise him of his right to testify pursuant to Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995), and to ensure that he validly waived that right; (2) the District Court erred in admitting State's Exhibit 3, an Administrative Driver's License Revocation Office (ADLRO) Notice of Administrative Review Decision, which Lau claims was not properly certified; and (3) there was insufficient evidence to support the District Court's guilty verdict. As explained below, we conclude that the District Court failed to comply with the

---

[1] (...continued)
vehicle remains suspended or revoked[.]

. . . .

(b) Any person convicted of violating this section shall be sentenced as follows without possibility of probation or suspension of sentence:

(1) For a first offense, or any offense not preceded within a five-year period by conviction for an offense under this section, section 291E-66, or section 291-4.5 as that section was in effect on December 31, 2001:

(A) A term of imprisonment of not less than three consecutive days but not more than thirty days;

(B) A fine of not less than $250 but not more than $1,000;

(C) Revocation of license and privilege to operate a vehicle for an additional year; and

(D) Loss of the privilege to operate a vehicle equipped with an ignition interlock device, if applicable[.]

[2] The complaint also charged Lau with driving without insurance, but this charge was dismissed before trial.

[3] The Honorable Dean E. Ochiai presided.

requirements of <u>Tachibana</u>. We reject Lau's other points of error. Based on the District Court's <u>Tachibana</u> error, we vacate Lau's OVLPSR-OVUII conviction and remand the case for a new trial.

DISCUSSION

We resolve the arguments raised by Lau on appeal as follows:

I.

Lau argues that the District Court's <u>Tachibana</u> advisement was "woefully deficient." We conclude that the District Court failed to comply with the requirements of <u>Tachibana</u> and that this failure requires that we vacate Lau's conviction.

A.

Prior to the defense resting, Lau's counsel notified the District Court that Lau would not be testifying. The District Court then conducted the following colloquy:

> THE COURT: Okay. Do you understand you have the right to testify or not testify? And if you elect not to testify, I cannot make any negative inferences against you with regard to your decision not to testify, okay?
>
> You had an opportunity to discuss whether or not you want to testify with your attorney?
>
> [LAU]: Right. Yes, I did.
>
> THE COURT: Have you made a decision as to whether or not you're going to testify or not?
>
> [LAU]: I did.
>
> THE COURT: Okay. And you've conveyed that decision to your attorney?
>
> [LAU]: Right.
>
> THE COURT: Okay, I'll let your attorney then advise the Court as to whether or not you're going to be testifying.
>
> [DEFENSE COUNSEL]: Your Honor, he will not be testifying this morning.
>
> THE COURT: Okay, thank you. Any other witnesses you'd like to offer [defense counsel]?

[DEFENSE COUNSEL]: Your Honor, defense has no other witnesses.

It is not clear why the District Court chose to have defense counsel, rather than Lau, state for the record whether or not Lau had decided to testify. What is clear is that the District Court should not continue this practice.

B.

In Tachibana, the Hawai'i Supreme Court held that "in order to protect the right to testify under the Hawai'i Constitution, trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify." Tachibana, 79 Hawai'i at 236, 900 P.2d at 1303 (footnotes omitted; emphasis added).

In State v. Staley, 91 Hawai'i 275, 982 P.2d 904 (1999), the trial court engaged in a colloquy with the defendant regarding the Tachibana advisements at the close of the prosecution's case in chief. Staley, 91 Hawai'i at 279-80, 982 P.2d at 908-09. However, at the close of the co-defendant's case, the defendant's waiver of his right to testify consisted solely of his attorney's on-the-record answer of "No" to the trial court's question, "Your client going [to] testify?"[4] Id. at 280, 982 P.2d at 909. The Hawai'i Supreme Court held that the trial court had committed plain error in the manner in which it had obtained the defendant's waiver of his right to testify. Id. at 286-87, 982 P.2d at 915-16.

The supreme court observed that "[w]hile the circuit court did engage in a colloquy with [the defendant] regarding [the defendant's] understanding of his right to testify, the circuit court failed to elicit an on-the-record waiver of [the defendant's] right. The circuit court simply asked [the defendant's] *attorney* whether [the defendant] was 'going [to]

---

[4] The trial court apparently adduced this waiver without reviewing the Tachibana advisements at the close of the co-defendant's case. See Stanley, 91 Hawai'i at 280, 982 P.2d at 909.

4

testify.'"  Id. at 286, 982 P.2d at 915 (brackets in original).
The supreme court concluded:

> In the present matter, the circuit court did not elicit from [the defendant] an on-the-record waiver of his right to testify.  The record affords no means by which this court can discern whether [the defendant] actually waived his right to testify or whether the decision was made entirely by his attorney.  Based on the rule established in Tachibana, we hold that the circuit court's failure to establish on the record that [the defendant's] decision not to testify was made knowingly and voluntarily constituted plain error.

Id. at 287, 982 P.2d at 916 (citations omitted).

In State v. Hoang, 94 Hawaiʻi 271, 12 P.3d 371 (App. 2000), the trial court provided the defendant with Tachibana advisements, but obtained the on-the-record waiver from the defendant's attorney, and not from the defendant himself:

> [DEFENSE COUNSEL]:  The judge is asking you do you understand that you have the right to testify and aright [sic] not to testify.  And that if you choose not to testify, that cannot be used against you.  Do you understand that?
>
> [HOANG]:  Yes.
>
> THE COURT:  Sir, do you understand that?
>
> [DEFENSE COUNSEL]:  That's right, your Honor.  He has elected not to testify.
>
> THE COURT:  Okay.  Very well.  You may continue, Mr. [Prosecutor].

Hoang, 94 Hawaiʻi at 278, 12 P.3d at 378 (brackets in original).
This court held that the defendant had not validly waived his right to testify.  Id. at 278-79, 12 P.3d at 378-79.  We stated:

> Tachibana is not satisfied, however, by a waiver by proxy.  And we do not niggle when we insist that the court obtain the defendant's waiver directly from the defendant. For another of the primary purposes of the Tachibana colloquy is to ensure that the waiver is indeed the defendant's and not that of the defendant's attorney.  The constitutional right to testify is personal to the defendant, to be relinquished only by the defendant, and may not be waived by counsel as a matter of trial strategy.

Id. at 278, 12 P.3d at 378.

C.

Staley and Hoang make it clear that the trial court should obtain an on-the-record waiver of the right to testify from the defendant's own mouth, and not from the defendant's attorney. The State, however, suggests that under the particular circumstances of this case, the trial court's failure to obtain a waiver directly from Lau was immaterial because the record shows that Lau understood and personally waived his right to testify. The State notes that the District Court had verified through its colloquy with Lau that Lau had made a decision on whether to testify and had communicated his decision to defense counsel, whom the District Court then asked to communicate Lau's decision. The State asserts that it "strains credulity" to suggest that given this preface, "Lau's defense counsel may have misinformed the [District Court] about Lau's decision not to testify and that Lau stood by silently while his counsel misinformed the court."

We need not decide whether the District Court's failure to obtain an on-the-record waiver directly from Lau, by itself, was sufficient to require overturning Lau's conviction. This is because, as Lau argues, the District Court's Tachibana advisement was deficient for failing to advise Lau that (1) if he wanted to testify, that no one could prevent him from doing so; and (2) if he testified, the prosecution would be allowed to cross-examine him.[5] See Tachibana, 79 Hawai'i at 236 n.7, 900 P.2d at 1303 n.7. We conclude that the District Court failed to comply with the requirements of Tachibana. We further conclude that the District Court's error in failing to comply with the requirements of Tachibana was not harmless. See Hoang, 94 Hawai'i at 279, 12 P.3d at 379 (observing that "it is inherently difficult . . . to divine what effect a violation of the defendant's constitutional

_____

[5] We are not persuaded by the State's argument that these deficiencies were cured by the District Court's prior advisement of Lau of these matters after the State's first witness. Lau did not acknowledge his understanding of these matters during the prior advisement.

right to testify had on the outcome of any particular case").
Accordingly, we must vacate Lau's OVLPSR-OVUII conviction.

II.

Lau contends that the District Court erred in admitting
Exhibit 3, an ADLRO Notice of Administrative Review Decision,
which showed that Lau's driver's license was administratively
revoked for operating a vehicle under the influence of an
intoxicant at the time of the offense charged in this case.  In
particular, Lau contends that the document was not properly
authenticated because the certification appearing on the document
was insufficient.  We disagree.

The record shows that Exhibit 3 contained an embossed
seal and a certification which stated: "I do hereby certify that
this is a full, true, and correct copy of the document on file in
this office.  I attest that I am authorized to certify copies for
the ADLRO[.]"  The certification was signed and dated, and the
words "Judiciary, Admin. Driver's License Revocation Office,
State of Hawaii" appeared below the signature and date.

We conclude that the certification was sufficient to
authenticate Exhibit 3, pursuant to Hawai'i Rules of Evidence
(HRE) Rule 902 (1993 & Supp. 2014).[6/]  Exhibit 3 was a document

---

[6/] HRE Rule 902 provides, in relevant part:

**Rule 902  Self-authentication.**  Extrinsic evidence of
authenticity as a condition precedent to admissibility is not
required with respect to the following:

(1)     Domestic public documents under seal.  A document
        bearing a seal purporting to be that of the United
        States, or of any state, district, commonwealth,
        territory, or insular possession thereof, or the
        Panama Canal Zone, or the Trust Territory of the
        Pacific Islands, or of a political subdivision,
        department, officer, or agency thereof, and a
        signature purporting to be an attestation or
        execution.

.  .  .  .

(4)     Certified copies of public records.  A copy of an
        official record or report or entry therein, or of a
        document authorized by law to be recorded or filed and
                                        (continued...)

7

bearing the seal purporting to be that of a state department, officer, or agency and a signature purporting to be an attestation or execution; it was also a copy of an official record certified as correct by a person authorized to certify copies for the ADLRO. See HRE Rule 902(1) and (4). Lau argues that the certification was insufficient because the signature of the ADLRO official was illegible and he could not determine the identity of the signer from the certification. However, Lau cites no authority for the proposition that a legible signature permitting the identification of the signer are preconditions for a valid certification. Moreover, since the records of the ADLRO are accessible to the public, Lau could have examined the ADLRO records if he had any concerns about the authenticity of Exhibit 3. See Hawai'i Court Record Rules Rule 10 (2012).

III.

Lau argues that there was insufficient evidence to support the District Court's guilty verdict because: (1) without Exhibit 3, there was no evidence that his license was suspended or revoked at the time of the charged offense; and (2) the State failed to prove that he operated a vehicle on a public way, street, or highway. We disagree.

As previously noted, Exhibit 3 was admissible, which disposes of Lau's first argument. As to Lau's second argument, the State presented evidence at trial that Lau was observed stopped at a light at the intersection of Kapi'olani Boulevard and Pensacola Street, and that Lau was subsequently stopped by a police officer after Lau proceeded through the intersection traveling westbound on Kapi'olani Boulevard. In State v. Davis, 133 Hawai'i 102, 121-22, 324 P.3d 912, 931-32 (2014), the Hawai'i

---

5/ (...continued)
actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) or complying with any statute or rule prescribed by the supreme court.

Supreme Court took judicial notice on appeal of a City and County of Honolulu ordinance and speed schedule, which showed that a section of Kamehameha Highway at issue in that case was a "public way." The supreme court relied upon its taking of such judicial notice in rejecting Davis's claim that the State had failed to establish that he operated a vehicle on a public way, street, or highway. Id. We similarly take judicial notice of the same ordinance and speed schedule in concluding that the evidence that Lau drove his vehicle westbound on Kapi'olani Boulevard through the intersection of Kapi'olani Boulevard and Pensacola Street was sufficient to establish that he operated a vehicle on a public way, street, or highway.

CONCLUSION

For the foregoing reasons, we vacate the District Court's Judgment with respect to Lau's OVLPSR-OVUII conviction based on the District Court's Tachibana error, and we remand the case for a new trial.

DATED: Honolulu, Hawai'i, March 30, 2015.

On the briefs:

Titiimaea N. Ta'ase
Deputy Public Defender
for Defendant-Appellant

Brian R. Vincent
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*
Chief Judge

Associate Judge

Associate Judge

9